## Kingsbury, Garnishee, *versus* Davidson.

1. Where the creditor seizes the personal property in the possession of a husband for his debt, the presumption is that it belongs to the husband, and not to the wife. If the wife sets up a claim to it as against the husband's creditors, she must show that it is hers. The burden of proof is with her, and the evidence must be clear and satisfactory.

2. A married woman purchased a colt, partly for cash, which she paid out of her own money, and partly on credit, which was given to her. She placed sufficient of her own money to pay the balance due upon the colt in the money-drawer of a business which she claimed was hers, and afterward took this amount out of the drawer and paid the balance due upon the colt. In an issue as to the ownership of the colt between her and her husband's creditors, *Held* (a), that in order to validate her right to the colt she need not show that she owned the business in the drawer of which she placed her money. (b) That she could put her own money into the money drawer used in the management of her husband's business without forfeiting the right to it.

March 15th, 1886. Before Mercur, C. J., Gordon, Paxson, Trunkey, Green and Clark, JJ. Sterrett, J. absent.

Error to the Court of Common Pleas of *Bradford county*: Of January Term, 1886, No. 39.

Foreign attachment brought by George B. Davidson against A. C. Bentley, defendant, and L. S. Kingsbury, garnishee, in whose hands the sheriff attached a horse, Waxey B, as the property of A. C. Bentley. Kingsbury gave bonds and retained the horse. Judgment was obtained against the defendant for $494.38.

A *scire facias* was issued and served upon Kingsbury, the garnishee, to which he pleaded *nulla bona*.

The facts of the case as they appeared at the trial before Morrow, P. J., sufficiently appear in the opinion of the Supreme Court.

[Kingsbury, Garnishee, v. Davidson.]

In the general charge the court instructed the jury, *inter. alia*, "In your verdict we direct you to find, first, that this horse ,Waxey B., was in the possession of L. S. Kingsbury when the attachment was executed, and that said horse was worth at that time so many dollars (which amount you will have to fix from the evidence), and that A. C. Bentley owned (at least) two sevenths of said horse. And if you fail to find that the $500 which Mrs. Bentley at first paid on the horse was the money that her mother gave her, then you will find that A. C. Bentley owned one half of the horse."

The verdict of the jury was: "That the horse, Waxey B., was in the hands of L. S. Kingsbury at the time the attachment was served, and that the value of the horse was $1,650, and that A. C. Bentley's interest was two sevenths of the value of the horse, which would be $471.43."

Judgment was accordingly entered, and thereupon the garnishee took this writ assigning for error, *inter alia*, the above portion of the charge of the court.

*D. C. De Witt*, for plaintiff in error.—It is well settled that when a wife has a separate estate she may hold it against the creditors of her husband: Weiman *v.* Anderson, 6 Wr., 311; Rush *v.* Vought, 5 P. F. S., 437; Bowen *v.* Pendleton, 10 Id., 421; Musser *v.* Gardner, 16 Id., 242.

A married woman may purchase on the credit of her separate estate: Sixbee *v.* Brown, 10 N., 153.

She is entitled to the benefit of all its products, increase and avails: Holcomb *v.* Banks, 11 N., 343.

If a husband contributes a small portion of the purchase money his creditors are only entitled to the amount he contributed: Heily *v.* Ray, 2 Pears., 216.

The court should have said to the jury, if you find Mrs. Bentley purchased the horse as she claims, there can be no recovery in this case, because she would be entitled to the possession of the horse, and this action in this form cannot be sustained: Heily *v.* Ray, 2 Pearson, 216; Rush *v.* Vought, 5 Smith, 437.; Sixbee v. Bowen, 10 Nor., 153; Holcombe *v.* P. S. Banks, 11 Nor., 343; Diven *v.* Diven, 6 Smith, 111; McCurdy *v.* Canning, 14 Id., 40; Gillan *v.* Dixon, 15 Id., 395.

In Rush *v.* Vought, 5 Smith, 444, AGNEW, J. says: "Equity will enforce a trust on a contract, but cannot create a title where none exists.".

*D. A. Overton* (*B. M. Peck* and *E. B. Parsons* with him) for defendant in error.—In the absence of clear and satisfactory proof that property purchased by wife after marriage was paid for out of her separate funds, the presumption is that it

was paid for with means furnished by her husband: Bradford's Appeal, 29 Penn. St,. 513; Topley *v.* Topley, 31 Id., 328; Walker *v.* Reamey, 36 Id., 410; Rhodes *v.* Gordon, 38 Id., 277; Aurand *v.* Schaffer, 43 Id., 363; Bower's Appeal, 68 Id., 126.

2. That it was paid for out of the profits of business managed by her husband, as her agent, is not enough: Gamber *v.* Gamber, 18 Pa. St., 363; Keeney *v.* Good, 21 Id., 349; Hallowell *v.* Horter, 55 Id., 375; Bucher *v.* Ream, 68 Id., 421.

3. Where she obtained the money to start and carry on this business was not shown, and from the uniform decisions of this court, commencing with Gamber *v.* Gamber, *supra*, on down to Pier *v.* Seigel, 11 Out., 502, "the rule is, that where husband and wife are in joint possession or occupancy of personal or real estate, the law presumes the property to belong to the husband, and this presumption continues until *the wife shows that she* acquired it by means not derived from her husband, and the burden of proof is upon her to prove that she so acquired it.

Mr. Justice CLARK delivered the opinion of the court, May 17th, 1886.

This action is, in form, a foreign attachment, brought by George B. Davidson, who resides in Bradford County, in this state, against A. C. Bentley, a resident of Waverly, in the state of New York, in which a young trotting horse, named Waxey B., alleged to be the property of the defendant, was attached in the hands of L. S. Kingsbury, the garnishee. On the 14th February, 1883, judgment was entered in favor of the plaintiff and against the defendant, in the sum of $494.38.

The present contention arises upon the trial of the *scire facias* against the garnishee; the plea is *nulla bona*, and the defence under it is, that the trotting horse attached is not the property of the defendant, but was in fact owned by Mrs. A. W. Bentley, the defendant's wife. It is admitted that the horse Waxey B., when a colt, was the property of one T. J. Berry; that he was of good blood, but was then poor, unhealthy, and of little value. In October, 1878, when the colt was some eighteen months old, Berry placed him in the hands of Bentley, to be cared for and trained for the track as a trotter.

Mrs. Bentley, at this time, it was shown, was, or assumed to be, the owner of a livery establishment at Waverly, which was conducted in her name. The testimony was somewhat conflicting as to whether or not Bentley took charge of the colt on his own account or in the interest of his wife; but, at all events, the bargain was that Bentley or his wife was to take

the colt, care for and "cultivate" him, and, when sold, one half of the proceeds should belong to Berry and the other half to Bentley or his wife, as the case may be. It appears, however, that, in March, 1879, Mr. Berry went over to Waverly and sold the colt to Mrs. Bentley for $70.00. The testimony is wholly to the effect that the sale was of the entire interest, not of the one half only; and as the husband was present and participated in the transaction, the purchase by the wife, whatever the right of the husband may have been, must be treated as a purchase of the entire title, if she paid her own money upon it.

When a creditor seizes property in the possession of a husband for his debt, the presumption is that it belongs to him and not to the wife, and this, as stated by the learned court below, is a violent one, and is adhered to for the purpose of protecting creditors. If the wife sets up a claim to it as against the husband's creditors, she must show that it is hers; the burden of proof is upon her, and the evidence must be clear and satisfactory.ry.

Mrs. Bentley testified, and in this she was to some extent corroborated by her husband, that her mother, who lived in Kansas, had on several occasions given her money; that in the fall of 1878 her mother was at Waverly, and gave her $70.00; that she kept this money in the drawer with the money received from the livery, but separate from it, and in the spring of 1879, when she bought the colt from Berry, she applied $50 of this money on the purchase; that the remaining $20 remained in the drawer, and was used and applied by her indiscriminately with the other moneys therein, in buying such things as she needed. In sixty days thereafter she took twenty dollars from the same drawer, and, in compliance with her contract, paid the balance of the purchase. The colt, it appears, afterwards grew to be a valuable horse, and exhibited unusual power for speed; he was estimated to be worth from $1,500 to $2,000.

There is no evidence that Mrs. Bentley purchased and paid for the livery with her own funds; as to Bentley's creditors, the presumption is that the livery was his, but the $70 which Mrs. Bentley received from her mother was her money, and it did not become any less hers from the fact that she kept it in the money drawer of the livery.

If the evidence of Mrs. Bentley be true, and it is not contradicted, the $50 which she first paid upon the purchase of the colt, was the identical money she received from her mother in the previous autumn, and in which her husband could have no possible interest. The evidence is that the credit for the balance was given to her and not to the husband; she then

had money on hand of her own sufficient to pay it, and it was upon the faith of her ability to pay the credit was given. The money which she afterwards did pay was taken from the drawer, in discharge of the debt the drawer owed her for the money she had previously deposited in it. If, instead of being the wife of Bentley, she had been his business manager or clerk, it would not be doubted, we think, that she might reimburse herself for funds of her own she had thus applied, and we cannot see upon what rule of law a wife may not do the same.

The learned court seemed to suppose that, in order to validate her right to this colt, Mrs. Bentley was obliged to show that she had a right to the livery also; that she could not put her own money into the money drawer used in the management of her husband's business without absolutely forfeiting her right to it. She might, we think, have put her money in the drawer, or indeed in his pocket-book, and suffered him to carry it upon his person for her, or she might have loaned it to him, and in either case she had a right, with his consent, to receive it back again, in the same or other bills as she chose. There is no evidence that, by depositing the money in the drawer, she intended to bestow the money as a gift to her husband; on the contrary, she assumed to be the owner of the livery; as between herself and her husband she was the owner; the money was put into the drawer as her own money, and was drawn out again as her own. We think the learned court erred in giving binding instructions to the jury that, in any event, under the evidence, the plaintiff below was entitled to recover at least two sevenths of the value of the horse. The whole question was one of fact for the determination of the jury, and the cause should have been so submitted.

.The judgment is reversed, and a *venire facias de . novo* awarded.